**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**DORIS Y. ROWE,**

       **Plaintiff,**

vs.                                                                  **Civ. No. 99-1397 JP/RLP**

**KENNETH S. APFEL, Commissioner
of Social Security Administration,**

       **Defendant.**

**UNITED STATES MAGISTRATE JUDGE'S
ANALYSIS AND RECOMMENDED DISPOSITION[1]**

1.     Plaintiff, Doris Y. Rowe, (Plaintiff herein), filed an application for Disability Income Benefits (DIB) under Title II of the Social Security Act, on December 27, 1995. Plaintiff alleged that she had been disabled since November 3, 1993, due to wrist and kidney problems. Plaintiff's application was denied by an Administrative Law Judge (ALJ) after an administrative hearing. The ALJ's decision was vacated by the Appeals Council and remanded with instructions to obtain vocational testimony. Plaintiff's claim was again denied after the second administrative hearing. The Appeals Council declined review. The matter now before the Court is Plaintiff's Motion to Reverse for an award of benefits, or in the alternative, to remand for additional proceedings.

**I.**     **Standard of Review**

2.     This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

3.      The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant at steps one through four; the Commissioner bears the burden of proof at step five. **Id.**

**II.     Facts**

4.      Plaintiff was a custodian when she injured her right wrist in 1982[2]. Continued problems with the wrist eventually resulted in a limited arthrodesis (fusion) in 1985, with resultant limited range of motion of the wrist. Prior to surgery, she was placed on work restrictions which ranged from no use of her right wrist and hand, to no repetitive use of her right wrist and hand. (Tr. 173, 175-176, 178). After surgery, work restrictions prohibited her from lifting more than 30 pounds and from repetitive use of her right hand and wrist. (Tr. 208-209). She continued to develop chronic inflammation of the right wrist and forearm, also called overuse syndrome, when she engaged in repetitive motions of the

---

[2]Lunotriquetral tear and complete instability of the lunotriquetral joint, with early degenerative changes on the proximal ulnar surface of the lunate. (Tr. 145).

right hand and wrist[3]. (Tr. 203, 235-237, 272-275). Plaintiff developed problems with her left wrist in 1987[4].

5.     Plaintiff was treated for episodes of pain involving her wrists by wearing a wrist splint and with nonsteroidal anti-inflammatory medication. In 1992, however, use of nonsteroidal anti-inflammatory medication caused her to develop interstitial nephritis. (Tr. 188, 235, 247-248). This kidney condition prevents her from using that type of medication. (Tr. 248). At the time of her administrative hearings in July of 1996 and April of 1988, Plaintiff used Tylenol as necessary for relief of pain, as well as a wrist splint for her right wrist. (Tr. 140, 143, 292, 328).

6.     Plaintiff continued to work for several years after her wrist problems developed. She was assigned to light duty work from 1986 to 1991, which she described as answering telephones and doing a little bit of copying and filing. (Tr. 42). From 1991 until she quit her job in 1993 she did light security work, described as checking fire extinguishers, eye wash and locks in eighty buildings. (Tr. 43). Plaintiff testified that her pain problems have not changed since she stopped working, and that she has pain whenever she does anything repetitive. (Tr. 27, 30, 32, 45-47).

7.     The first ALJ found that Plaintiff had the residual functional capacity for light work, despite "limitations requiring[5] repetitive bimanual fine manipulations." (Tr. 66). The ALJ applied the Medical-Vocational guidelines, without input from a vocational expert, and found that Plaintiff was

---

[3]For example, on November 11, 1986, Plaintiff's treating orthopedic surgeon noted her complaints of increasing pain in her wrist, stating, "It's of note that she has been in a job where she repetitively does filing or typing into a computer." (Tr. 275). On July 12, 1988, medical personnel at Plaintiff's place of employment noted Plaintiff's complaints of pain one day after she had been assigned a job that required constant turning of pages. (Tr. 196).

[4]An arthrogram of Plaintiff's left wrist in October 1987 revealed a tear of the triangular fibrocartilege of the wrist and a possible small interosseous leak in the scapholunate area. (Tr. 267).

[5]It is clear that the ALJ meant to state that Plaintiff's wrist impairment prevented or limited, rather than required, bimanual fine manipulation.

not disabled. (Tr. 64-67). This decision was vacated by the Appeals Council and remanded with instructions to obtain vocational testimony assessing the impact of her non-exertional wrist limitations on her occupational base:

> The (ALJ's) decision indicates that the claimant has medically determinable impairments resulting in significant exertional limitations (referring to the finding that Plaintiff had the RFC for at least light work). The record also indicates that the claimant has significant non-exertional limitation in repeated hand movement (referring to medical record documenting inflammatory response/overuse syndrome caused by repetitive hand use), and the ALJ concluded that the claimant "would have limitations requiring repetitive bimanual fine manipulations." However, there is no vocational evidence in the record as to the extent to which the claimant's non-exertional limitations erode the occupational base for light work.
>
> Upon remand, the Administrative Law Judge will:
>
> Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (S.S.R. Rulings 83-14 and 96-8p and Channel v. Heckler, 747 F.2d 577, 582 (10th Cir. 1994)). . . The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. 404.1466).

(Tr. 86-87).

8.     Evidence from the vocational expert at the second administrative hearing was as follows:

> Q:     I'd like you to assume for the purposes of this proceeding, the claimant alleging an onset of disability at age 48, currently 53, high school or 12th grade education and the past relevant work history as noted in Exhibit 1E and as she testified here to this date. For the purposes of my first hypothetical I would like you to assume she can lift and carry 30 pounds, using both hands and 10 pounds frequently. No problems sitting or standing. Walks one-and-a-half to two miles per day. Grip strength on the left, 45 pounds; on the right, 30 pounds. She can stand on her heels, toes, sides of her feet and deep squat. She has a, a solid arthrodesis on the right wrist with no pre-arthritic conditions. She has full rotation of all joints with the exception of the right wrist, which has 45 degrees of deviation, 40 degrees of palm reflection (*sic*, palmar flexion), 20 degrees radial deviation and 6 degrees ulnar deviation. But both hands can be fully extended and fist made. All fingers can be opposed to the thumb, and she has a strong grip. Based on that hypothetical, could the claimant return to any of her past relevant work, either as she performed it or as it would be

performed in the national economy.[6]

A:   Yes. An individual such as that could do the work of the filing clerk . . . as well as the bindery operator.

\* \* \*

Q:   . . . if you were to assume further . . . that this individual should not be required to do the continuous repetitive push and pull all day long as she indicated. And, and on occasion she indicated she does have wrist braces that she uses – not all the time, but on occasion, could she still perform those jobs?

A:   I would eliminate the bindery operator . . . because of continuous use of the hands. But I believe an individual such as that could still do the filing clerk

\* \* \*

Q:   The job of filing clerk, you - - it's your testimony then that you think there's no repetitive action involved in, in the job of filing clerk?

A:   I'm not saying that there's no repetitive, but repetitive motion of the hands is not a – it's not a constant. And filing clerks are usually changing, they'll change job duties so they would not be required to sit continuously at a keyboard and repetitively enter information into a keyboard. There would be an opportunity to change activities.

Q:   Okay, what percentage of the time would you think probably that, that that job would not involve repetitive movement?

A:   I could tell you use of the hands would be frequent but not continuous if that's more information.

(Tr. 54-56)

9.   The Vocational Expert did not provide any testimony relevant to step five of the sequential evaluation process.

**III.   Analysis**

10.   Hypothetical questions to a vocational expert must reflect with precision all of a claimant's

---

[6] The factual basis for the physical condition set out in this hypothetical is found in the reports of two consulting physicians, Dr. Deming and Dr. Allen (Tr. 292-301, 327-329)

5

impairments, see **Hargis v. Sullivan**, 945 F.2d 1482, 1492 (10th Cir. 1991), however the hypotheticals need only reflect impairments and limitations that are borne out by the evidentiary record, **Evans v. Chater**, 55 F.3d 530, 532 (10th Cir.1995). The evidentiary record bears out that Plaintiff is not capable of "repetitive" motion with her hands/wrists. (Tr. 176, 173, 208, 185, 266, 196, 158-9, 235).

11. The ALJ found that Plaintiff could return to her past work as a file clerk. In support of this finding, he relied on evidence from the vocational expert, stating the vocational expert had testified that the job of file clerk required no repetitive motion of the hand or wrist. (Tr. 16). The ALJ mischaracterized the vocational expert's testimony. The Vocational Expert testified that the job of file clerk did require repetitive motion of the hands and wrists on a frequent but not constant basis. (Tr. 55-56).

12. I find that the Vocational Expert's testimony does not provide substantial evidence upon which the ALJ could conclude that Plaintiff had the residual functional capacity to perform the job of file clerk.

**IV.     Recommended Disposition**

13. For the reasons stated above, I recommend that Plaintiff's Motion to Reverse be granted. Plaintiff has established that she is not capable of returning to past relevant work. On remand, the Commissioner is instructed to conduct additional proceedings to determine if Plaintiff can perform other work (step five of the sequential evaluation process). This determination will require testimony from a vocational expert.

RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE